UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KALVIN WASHINGTON,

        Petitioner,

                                  CASE NO. 2:09-CV-10771

v.                                 HONORABLE GERALD E. ROSEN

BARRY DAVIS,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS,  DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Kalvin Washington ("Petitioner") was convicted of third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d(1)(b), following a jury trial in the Oakland County Circuit Court in 2004 and was sentenced as a third habitual offender, MICH. COMP. LAWS § 769.11, to 20 to 30 years imprisonment. In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, the propriety of his sentence, the denial of counsel, prosecutorial misconduct, judicial misconduct, the effectiveness of appellate counsel, and the denial of an evidentiary hearing in the state courts.  For the reasons set forth, the Court denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II.    Facts and Procedural History

Petitioner's conviction arises from the sexual assault of his girlfriend's 16-year-old daughter on February 9, 2003.  The Court adopts the statement of facts in Petitioner's brief on direct appeal

1

in the state courts to the extent those facts are consistent with the record.  Those facts are as follows:

Tirni Dowl testified that she had been sixteen years of age on the date that the crimes charged here were alleged to have occurred. (T 4-1-04 p 72) She stated that she was living on Bishop Street in Detroit with her mother and her three younger brothers at that time. (T 4-1-04 pp 71-72) She said that she had met the defendant about a month before the incident. (T 4-1-04 p 75) She said that he and her mother had been dating. (T 4-1-04 p 75)

Tirni Dowl testified that on February 9, 2003 she was at home watching her younger brothers while her mother was out. (T 4-1-04 pp 78-79) She stated that the defendant called her and asked for her mother. (T 4-1-04 p 79) She said that when she told him that her mother was not at home the defendant said that he was coming over to pick her up. (T 4-1-04 pp 79-80) She said that when the defendant arrived she went outside and got into his car. (T 4-1-04 pp 80-81)

Tirni Dowl testified that she thought that they were going shopping or out to eat. (T 4-1-04 p 83) She stated that the defendant had previously told her that they would do that sometime. (T 4-1-04 p 83) She said that while they were driving the defendant told her that she would become a lady that night. (T 4-1-04 p 83) She said that he parked his car in the lot of the Guest Hotel near Nine Mile Road, John R Road and I-75. (T 4-1-04 pp 83-84)

Tirni Dowl testified that the defendant asked her for a kiss while they sat in the car. (T 4-1-04 p 86) He stated that when she refused he grabbed her head and put his tongue in her mouth. (T 4-1-04 p 87) She said that next he told her to remove her pants and underwear because he was going to take her virginity. (T 4-1-04 p 88) She said that he raised his hand at her as if to strike her. (T 4-1-04 p 89) She said that she took off her pants, boots and underwear because she was scared. (T 4-1-04 p 90)

Tirni Dowl testified that the defendant told her to put her seat back and to recline it. (T 4-1-04 p 91) She stated that the defendant told her to put her legs up. (T 4-1-04 p 91) She said that when she had done so the defendant put his face between her legs and began to lick her vagina. (T 4-1-04 p 92)

Tirni Dowl testified that the defendant told her that her mother and he had planned to have him take her virginity. (T 4-1-04 p 93) She stated that he asked her whether her mother had told her about the plan. (T 4-1-04 p 93) She said that the defendant was drinking gin and using cocaine while they were together in his car. (T 4-1-04 p 95 and pp 104-105) She said that she put her clothes back on after the defendant stopped. (T 4-1-04 p 95)

Tirni Dowl testified that the defendant then drove to a car wash near Dequindre Road in Detroit. (T 4-1-04 pp 96-97 and p 103) She stated that he exposed his penis and asked her to suck it but that she refused. (T 4-1-04 p 100) She said that he then told her to remove her pants again and that he licked her vagina again. (T 4-1-04 pp 101-102) She said that before she took off her pants the defendant threatened her

again with his raised hand. (T 4-1-04 p 101)

Tirni Dowl testified that after the defendant finished for the second time he began to drive around. She stated that the defendant told her to tell her mother a story about where they had been and what they had done. She said that he told her that he would kill her family if she told anyone what he had done with her. (T 4-1-04 pp 107 109) She said that he took her home after her mother called the defendant on his cellphone. (T 4-1-04 pp 111-113) She said that her mother was angry with her for leaving the house without her permission. (T 4-1-04 p 112)

Tirni Dowl testified that when she went into the house she went directly to her bedroom which was on the ground floor. (T 4-1-04 p 115) She stated that the defendant went upstairs to her mother's room. (T 4-1-04 pp 115-116) She said that she heard the defendant tell her mother to shut up. (T 4-1-04 p 111) She said that she heard her mother crying. (T 4-1-04 p 116) She said that she woke up her three brothers and that they all left the house. (T 4-1-04 pp 116-117)

Tirni Dowl testified that she took her brothers to a relative's home that was eight or ten blocks away from her home. (T 4-1-04 pp 117-119) She stated that her relatives called the police when she told them what had happened. She said that officers from the Detroit Police Department came to the relative's home and told her that she must go to the Hazel Park Police Department because that is where the incident occurred. (T 4-1-04 p 120) She said that her relative took her there and that she told officers from Hazel Park what had happened to her that night. (T 4-1-04 p 122) She said that she was visited again the following day by police officers from Detroit. (T 4-1-04 p 125)

During cross examination Tirni Dowl testified that she did not tell her mother that she was leaving her brothers alone at the house while she went out with the defendant. (T 4-1-04 p 138) She stated that her mother had told her not to leave the house. (T 4-1-04 p 138) She said that she did not tell her mother what had happened when she arrived at home because she feared what the defendant would do. (T 4-1-04 pp 152-153) She said that she did not go to her cousin's house on her own block when she took her brothers away from her home. (T 4-1-04 p 153) She said that the cousin who lived on her block was a Detroit police officer. (T 4-1-04 p 153) She said that she feared that he would be hurt by the defendant if she did so. (T 4-1-04 p 153)

Ra'Leisha Dowl testified that she is the mother of Tirni Dowl. (T 4-1-04 p 164) She stated that by February of 2003 she had known the defendant for a month and had been dating him. (T 4-1-04 p 164) She said that the defendant had been at her home and that he had met her four children. (T 4-1-04 pp 164-166) She said that her children all liked the defendant. (T 4-1-04 pp 165-166)

Ms. Dowl testified that on February 9, 2003 she met with the defendant at a gas station in Detroit at which time he gave her $100.00 because she did not have any money. (T 4-1-04 p 169) She stated that she was with a friend at that time and that she told the defendant that she would be going to her friend's house. (T 4-1-04 pp

3

169-170) She said that the defendant asked her to call him when she got there and to call again when she was leaving. (T 4-1-04 pp 171-172) She said that she was at the friend's house for two or three hours. (T 4-1-04 pp 172-173)

Ms. Dowl testified that when she went home she was told by her son that Tirni was out with the defendant. (T 4-1-04 pp 173-174) She stated that she called the defendant and told him to bring Tirni home. (T 4-1-04 pp 174-175) She said that she spoke to Tirni and told her that she was in trouble. (T 4-1-04 p 175) She said that she waited for them to return in her upstairs bedroom. (T 4-1-04 p 177)

Ms. Dowl testified that the defendant stopped her on her way out of the bedroom and told her that he wished to speak with her before she spoke to Tirni. (T 4-1-04 p 179) She stated that he acted like a dictator. (T 4-1-04 p 179) She said that he grabbed her arm and told her to sit down. (T 4-1-04 p 180) She said that the defendant then told her to take off her clothing which she did. (T 4-1-04 p 181) She said that she did so because she was afraid of the defendant. (T 4-1-04 p 182) She said that the defendant told her that she, Tirni and he were going to have a threesome. (T 4-1-04 pp 182-183) She said that she began to cry and that the defendant held her down on the bed. (T 4-1-04 p 182)

Ms. Dowl testified that the defendant told her that he had taken Tirni's virginity that night. (T 4-1-04 p 184) She stated that they then engaged in a struggle and that the defendant threatened to kill her. (T 4-1-04 p 185) She said that he also threatened to kill her family members that lived on her block. (T 4-1-04 p 188) She said that when she was finally able to go downstairs she discovered that all of the children were gone. (T 4-1-04 P 195) She said that the defendant then left her house. (T 4-1-04 p 196) She said that she did not call the police due to the defendant's threats. (T 4-1-04 p 198)

Ms. Dowl testified that later that same night she called the defendant and asked him where her children were. (T 4-1-04 p 198) She stated that the defendant told her that she knew where they were. (T 4-1-04 p 198) She said that the defendant told her to bring him a bag containing his belongings that was at her house. She said that she did so. (T 4-1-04 p 199) She said that at about 3:00 a.m. on February 10, 2003 she received a call from a relative in Texas who informed her that the children were safe and with his daughter. (T 4-1-04 p 200)

During cross examination Ms. Dowl denied that the defendant had confronted her on February 9, 2003 with the fact that she had been cheating on him. (T 4-1-04 p 217) She acknowledged that in spite of all that went on that night she took the defendant's things to him at his request. (T 4-1-04 p 224) She admitted that even after she told her relatives what had occurred she was not allowed to see her children until the following day. (T 4-1-04 p 227)

Off. Janeen Gielniak of the Hazel Park Police Department testified that she met with Tirni Dowl during the early morning hours of February 10, 2003 and that she took a statement from her regarding a sexual assault. (T 4-2-04 pp 4-6) She stated that

4

Tirni was obviously upset at the time. (T 4-2-04 p 7) She said that Tirni gave her a written statement. (T 4-2-04 p 7) She said that there is a hotel located at Nine Mile Road and John R Road in Hazel Park called the Guesthouse Inn. (T 4-2-04 pp 9-12) She said that it was called the Guesthouse Inn on February 9, 2003. (T 4-2-04 p 9)

During cross examination Off. Gielniak testified that the Guesthouse Inn has a fairly small parking lot. (T 4-2-04 p 14) She stated that on Sunday evenings the traffic on Nine Mile Road in that area would be light to medium. (T 4-2-04 p l3) She said that the hotel lobby is connected to the parking lot on Nine Mile Road. She said that there is a McDonald's restaurant and a strip mall close to the parking lot. (T 4-2-04 pp 14-15)

Lashon Morris testified that she is related to Tirni Dowl. (T 4-2-04 pp 16-17) She stated that on February 9, 2003 she lived on Bedford Street in Detroit which was eleven blocks away from Tirni's house. (T 4-2-04 p 17) She said that during the night of February 9, 2003 Tirni came to her door with her brothers in tears and quite upset. (T 4-2-04 P 18) She said that she took her to her bedroom where Tirni told her that her mother's boyfriend had tried to rape her. (T 4-2-04 p 20) She said that Tirni told her the defendant said he would kill her mother and her brothers if she did not do what he told her. (T 4-2-04 p 23) She said that she then called the Detroit police. (T 4-2-04 p 24)

The defendant testified that he was self employed as an over the road truck driver. (T 4-2-04 p 33) He stated that at the time of the alleged assault he lived in Phoenix, Arizona. (T 4-2-04 p 33) He said that he had met Ra'Leisha Dowl in a topless bar and that he began an intimate relationship with her in January of 2003. (T 4-2-04 p 34) He said that he had met her children about two weeks after he began his relationship with Ms Dowl. (T 4-2-04 p 34) He said that he had told her sons that he would buy them some new video games if they did well on their report cards. (T 4-2-04 p 36) He said that he never discussed buying anything for Tirni. (T 4-2-04 P 37)

The defendant testified that he had spent the night of February 8-9, 2003 with Ra'Leisha Dowl at her home on Bishop Street in Detroit. (T 4-2-04 p 37) He stated that he got up and left her home early that day. He said that at about 5:00 p.m. that day he saw her again at a gas station. He said that he gave her $100.00 pursuant to her request. (T 4-2-04 p 37) He said that at about 7:00 p.m. he received a telephone call from Tirni who was looking for her mother. (T 4-2-04 p 37) He said that she told him that she and her brothers were hungry. (T 4-2-04 p 37)

The defendant testified that he went to the house on Bishop Street, picked up Tirni and took her to a Pizza Hut to buy some pizza. (T 4-2-04 p 39) He stated that they went back to the house and ate the pizza with the boys. (T 4-2-04 p 39) He said that after an hour Ra'Leisha had not returned or called. (T 4-2-04 p 40) He said that he knew that she was supposed to be at the home of her friend, Nicole. (T 4-2-04 p 39) He said that Tirni told him that she knew where Nicole lived and that she could direct him to her house. (T 4-2-04 p 40) He said that they drove over there together. (T 4-2-04 p 40)

The defendant testified that when they arrived at Nicole's house Ra'Leisha's vehicle was there but that she did not come out of the house. (T 4-2-04 pp 40-41) He stated that he was told that she was not there. He said that he and Tirni then left, looked around that neighborhood for Ra'Leisha and eventually headed for the house on Bishop. (T 4-2-04 p 41) He said that Ra' Leisha called him on his cellphone and told him that she was at home. He said that she also spoke to Tirni who then began to cry. (T 4-2-04 p 42) He said that Tirni told him that she was in trouble with her mother. (T 4-2-04 p 42)

The defendant testified that he argued with Ra'Leisha when they returned to the house because she did not come home and feed her children with the money that he had given to her and because she did not come to the door when he was at Nicole's house. (T 4-2-04 pp 42-43) He stated that the argument got loud and that he told Ra'Leisha to "shut up." (T 4-2-04 p 43) He said that the argument lasted for about fifteen or twenty minutes. (T 4-2-04 p 43)

The defendant denied that he took Tirni to a hotel in Hazel Park. (T 4-2-04 p 44) He denied that he assaulted her sexually there or in Detroit. (T 4-2-04 p 44)

App. Brf., pp. 4-13.

At the close of trial, the jury found Petitioner guilty of one count of third-degree criminal sexual conduct. The trial court subsequently sentenced him as a third habitual offender to serve 20 to 30 years imprisonment.

Following his conviction and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting that: (1) the prosecution presented insufficient evidence to support his conviction, (2) the trial court erred in scoring the sentencing guidelines, (3) his sentence constituted cruel and unusual punishment, (4) the prosecution failed to timely provide a habitual offender notice, (5) the prosecution abused its charging authority, and (5) trial counsel was ineffective for failing to object to improperly charged offenses.[1] The Michigan Court of Appeals denied relief on those claims and affirmed Petitioner's convictions and sentences. *People v. Washington*, No. 256061, 2005 WL 2675152 (Mich. Ct. App. Oct. 20, 2005) (unpublished).

---

[1]The first three claims were raised by counsel and the last three claims were raised by Petitioner in a supplemental pleading.

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Washington*, 474 Mich. 1094, 711 N.W.2d 357 (2005).

Petitioner subsequently filed a motion for relief from judgment with the trial court asserting that: (1) he was denied counsel at the critical pre-trial stage of his criminal proceedings, (2) the prosecutor engaged in misconduct by placing inadmissible, irrelevant, and prejudicial information before the jury, (3) the trial court violated his due process rights by acquiescing control of the proceedings to the prosecution, and (4) appellate counsel was ineffective. Petitioner also requested an evidentiary hearing on his claims. The trial court denied the motion, finding that Petitioner failed to establish cause or prejudice under Michigan Court Rule 6.508(D)(3) as the claims lacked merit, and determined that an evidentiary hearing was unnecessary. *People v. Washington*, No. (Oakland Co. Cir. Ct. Feb. 6, 2007). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals raising the same claims, which was denied "for lack of merit in the grounds presented." *People v. Washington*, No. 279139 (Mich. Ct. App. Feb. 20, 2008). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied "for failure to establish entitlement to relief under MCR 6.508(D)." *People v. Washington*, 482 Mich. 1029, 769 N.W.2d 208 (2008).

Petitioner thereafter instituted this federal habeas action raising the following claims as grounds for relief:

I.    The prosecution presented insufficient evidence to support his third-degree criminal sexual conduct conviction.

II.   The trial court erred in scoring Offense Variables 7 and 11 of the state sentencing guidelines.

III.  His third habitual offender sentence of 20 to 30 years imprisonment constitutes cruel and unusual punishment.

IV.   He was denied due process when he was denied counsel at the critical pre-trial stage of his criminal proceedings.

7

V.      He was denied due process when the prosecutor engaged in misconduct by placing inadmissible, irrelevant, and prejudicial information before the jury.

VI.     He was denied due process where the trial court acquiesced control of the proceedings to the prosecution.

VII.    He was denied due process because appellate counsel was ineffective.

VIII.   The state court erred in failing to grant him an evidentiary hearing on his claims.

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are barred by procedural default.

## III.   **Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed this petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme

Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, _ U.S. _, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.**   **Analysis**

    **A.**   **Insufficient Evidence Claim**

Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his third-degree criminal sexual conduct conviction. In particular, Petitioner claims that the victim's testimony was not credible and the prosecution failed to provide any corroborating evidence at trial. Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), *cert. den.* _ U.S. _, 130 S. Ct. 1081 (2010). Furthermore, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, the elements of third-degree criminal sexual conduct as charged in Petitioner's case are: "(1) sexual penetration of the complainant, (2) achieved by force or coercion." *People v. Vaughn*, 186 Mich. App. 376, 380, 465 N.W.2d 365 (1990) (citing MICH. COMP. LAWS § 750.520d(1)(b); *People v. Hurst*, 132 Mich. App. 148, 346 N.W.2d 601 (1984)). For the purposes of the statute, the requisite "force" is that which "allow[s] the penetration when absent that force the penetration would not have occurred." *People v. Carlson*, 466 Mich. 130, 140, 644 N.W.2d 704 (2002). This "encompasses the use of force against the victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *Id*. Force or coercion also includes situations where "the actor forces the victim to submit by threatening to use

11

force or violence [when] the victim believes the actor has the present ability to execute the threat." *People v. Makela*, 147 Mich. App. 674, 682, 383 N.W.2d 270 (1985). Circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of a crime. *See People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993).

Applying these standards, the Michigan Court of Appeals determined that the prosecution presented sufficient evidence to support Petitioner's conviction based upon the victim's testimony. *Washington*, 2005 WL 2675152 at *1. This decision is neither contrary to *Jackson* nor an unreasonable application of federal law or the facts. The victim's testimony established the elements of the crime. The testimony of a victim alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases). Given the victim's trial testimony, a reasonable jury could have concluded that Petitioner committed the crime, that he acted with the requisite intent, and that the sexual encounter was the product of force or coercion and not consensual.

Petitioner essentially challenges the credibility and weight to be accorded the evidence presented at trial. It is well-settled, however, that "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. It is the job of the fact-finder, not a federal habeas court, to resolve credibility conflicts. *See Martin*, 280 F.3d at 618; *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). A federal court on habeas review cannot re-weigh the evidence or re-assess witness credibility. The state court's decision that a rational trier of fact could find the essential elements of third-degree criminal sexual conduct beyond a reasonable doubt was reasonable. Habeas relief is not warranted on this claim.

12

### B.   Sentencing Guidelines Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in scoring Offense Variable 7 (aggravated physical abuse) and Offense Variable 11 (criminal sexual penetrations) under the state sentencing guidelines.  Respondent contends that this claim is not cognizable on habeas review and lacks merit.

As an initial matter, the Court notes that Petitioner's sentences are within the statutory maximums.  *See* MICH. COMP. LAWS §§ 750.520d; 769.11.  A sentence imposed within the statutory limits is generally not subject to federal habeas review.  *See Townsend v. Burke*, 334 U.S. 736, 741 (1948).  Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law.  *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).  Petitioner makes no such allegation.

Petitioner's claim that the trial court erred in scoring two offense variables under the state sentencing guidelines is not cognizable on federal habeas review because it is basically a state law claim.  *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov.19, 1993) (ruling that departure from state sentencing guidelines is a state law issue which is not cognizable on federal habeas review); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).  Any error in scoring the offense variables and determining the guideline range does not merit habeas relief.  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).  Habeas relief does

13

not lie for perceived errors of state law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Moreover, even if this claim were cognizable, Petitioner is not entitled to relief. The Michigan Court of Appeals determined that Offense Variables 7 and 11 were properly scored based upon the victim's testimony and state law. *Washington*, 2005 WL 2675152 at *1-2. This decision is reasonable and is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

Additionally, Petitioner is not entitled to relief on any claim that the trial court violated his Sixth Amendment rights by relying upon facts neither admitted by him nor proven beyond a reasonable doubt. The Michigan Court of Appeals denied relief on this claim finding that *Blakely v. Washington*, 542 U.S. 296 (2004), and its progeny do not apply to Michigan's indeterminate sentencing scheme. *Washington*, 2005 WL 2675152 at *2. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner's Sixth Amendment challenge to his sentence has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("*Harris v. United States* tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."); *see also Montes v. Trombley*, 599 F.3d 490, 495 (6th Cir. 2010) (the *Blakely-Apprendi* rule requiring any fact that increases the penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury and proven beyond a reasonable doubt does not apply to laws that set the maximum sentence by statute but permit a judge to determine the minimum sentence through judicial factfinding, and does not preclude a judge from utilizing a preponderance-of-the-evidence standard when finding facts related to sentencing). This Court is bound by the Sixth Circuit's decisions. Because Petitioner's sentence is within the statutory  maximum, which was not enhanced by judicial factfinding, no Sixth Amendment violation occurred. Petitioner has failed to state a claim upon which relief may

14

be granted as to this issue.  Habeas relief is not warranted.

### C.    Cruel and Unusual Punishment Claim

Petitioner relatedly asserts that he is entitled to habeas relief because his third habitual offender sentence of 20 to 30 years imprisonment constitutes cruel and unusual punishment. Respondent contends that this claim lacks merit.

As an initial matter, to the extent that Petitioner asserts that his sentence is disproportionate under Michigan law or violates the Michigan Constitution, he fails to state a claim for federal habeas relief. *See Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).  Moreover, there is no federal constitutional right to individualized sentencing. *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Petitioner is also not entitled to relief on his claim that his sentence violates the Eighth Amendment.  The Eighth Amendment to the United States Constitution protects an individual from cruel and unusual punishment.  However, it does not require strict proportionality between a crime and its punishment.  *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583.  A sentence within the statutory maximum does not normally constitute cruel and unusual punishment.  *See Austin*, 213 F.3d at 302 (citing *United States v. Organek*, 65 F.3d 60, 62 (6th Cir.1995)).  "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *Thomas*, 49 F.3d at 261.

The Michigan Court of Appeals denied relief on this claim finding that Petitioner's sentence was within the guideline range, was presumptively proportionate, and was not cruel or unusual punishment. *Washington*, 2005 WL 2675152, *2.  This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  Petitioner was sentenced as a third

15

habitual offender to 20 to 30 years imprisonment on his third-degree criminal sexual conduct conviction. As noted, his sentence is within the statutory maximum, as well as the state sentencing guidelines. The trial court acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between his crime and sentence so as to offend the Eighth Amendment. Habeas relief is not warranted on this claim.

### D.   Procedural Default of Certain Claims

Respondent contends that Petitioner's claims concerning the denial of counsel/ineffective assistance of trial counsel, prosecutorial misconduct, and judicial acquiescence are barred by procedural default because Petitioner first raised them on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first presented these claims to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a

16

showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* MICH. CT. R. 6.508(D)(3). The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court clearly denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3) and concluded that Petitioner had failed to demonstrate good cause and actual prejudice because his underlying claims lacked merit and no miscarriage of justice had occurred. Accordingly, Petitioner's denial of counsel/ineffective assistance of trial counsel, prosecutorial misconduct, and judicial acquiescence claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

[t]he court must … determine whether, in light of all the circumstances, the

> identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." *Id*. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally

competent assistance. Appellate counsel presented legitimate issues on direct appeal, including claims challenging the sufficiency of the evidence and the validity of Petitioner's sentence. Such issues, although ultimately unsuccessful, were substantial. The claims presented in the motion for relief from judgment are not obviously stronger than the ones raised by appellate counsel on direct appeal. To be sure, the trial court, in considering the prejudice component of the cause and prejudice test, found that the claims lacked merit. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that it would find that the defaulted claims lack merit for the reasons stated by the trial court in denying Petitioner's motion for relief from judgment.

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### E.      Ineffective Assistance of Appellate Counsel Claim

Petitioner also asserts an independent claim that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the foregoing defaulted issues on direct appeal of his convictions. Petitioner is not entitled to habeas relief on any independent claim challenging

19

appellate counsel's conduct. As explained *supra*, he has failed to establish that appellate counsel was ineffective under the *Strickland* standard – and the defaulted claims lack merit. Habeas relief is therefore not warranted on this claim.

### F.   Evidentiary Hearing Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the state courts failed to grant him an evidentiary hearing on his claims and/or he is entitled to an evidentiary hearing in federal court. To the extent that Petitioner claims that the state courts violated state law in denying him an evidentiary hearing, he is not entitled to relief. *See Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) (citing *Baze v. Parker*, 371 F.3d 310, 322-23 (6th Cir. 2004)). A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review. This Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. *See, e.g., Estelle*, 502 U.S. at 67-68.

Moreover, there is no clearly-established Supreme Court law which recognizes a constitutional right to an evidentiary hearing on state post-conviction review to develop issues, including claims of ineffective assistance of counsel. *See Hayes*, 193 F. App'x at 584; *Hall v. Berghuis*, No. 2:07-CV-12163, 2009 WL 2244793, *9 (E.D. Mich. July 27, 2009) (citing *Hayes* and denying habeas relief on similar claim); *accord Poindexter v. Jones*, No. 1:05-cv-833, 2008 WL 5422855, *4 (W.D. Mich. Dec. 30, 2008). Lastly, given the Court's determination that the foregoing claims lack merit, Petitioner has not shown the need for an evidentiary hearing. Habeas relief is not warranted.

## V.   Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition and the petition must therefore be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.

*See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37.  When a court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484-85.

Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists would not find the Court's procedural ruling debatable.   A certificate of appealability is not warranted.  The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as any appeal would be frivolous and cannot be taken in good faith.  *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  June 3, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 3, 2011, by electronic mail and upon Kalvin Washington, #493833, Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI 49784 by ordinary mail.

s/Ruth A. Gunther
Case Manager